MITSURU HIGA, Plaintiff-Appellant, *v.* PERCY K. MIRIKITANI, Defendant-Appellee, and DAVID E. NAMAKA, Defendant.

NO. 5363

DECEMBER 11, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON and KOBAYASHI, JJ.

OPINION OF THE COURT BY LEVINSON, J.

On January 1, 1964, the plaintiff-appellant sustained bodily injuries in an automobile accident allegedly caused by the negligence of Yoshiro Kuroki, the driver of the car in which the plaintiff was a passenger. Kuroki was killed in the collision, and within approximately one month thereafter, or in March 1964, as the defendant-appellee claims, the plaintiff secured the legal services of the defendant, an attorney licensed to practice law in this state, with the mutual understanding that the defendant would undertake the prosecution of the plaintiff's claim against Kuroki's estate. Although cognizant from the outset that the alleged tortfeasor was dead, the defendant failed to initiate legal action against the estate until December 10, 1965, more than eighteen months after May 2, 1964, the date of the first publication of notice to creditors by Kuroki's administrator pursuant to RLH 1955, § 317-23 (now HRS § 531-23).

The estate filed an answer to the plaintiff's complaint on January 3, 1966, followed by an amended answer on January 17. Both pleadings alleged as a defense that the plaintiff's claim was barred because not submitted within four months of the date of the first publication of notice to creditors, as required by RLH 1955, § 246-5 (as amended, now HRS § 663-6) & § 317-23 (now HRS § 531-23). Although thus made aware that the estate was asserting the statute of limitations as a defense, the defendant allegedly represented to the plaintiff on numerous occasions "up to and including May or June, 1967" that the claim was proceeding normally and eventually would be tried on the merits. Dissatisfied with the treatment of his case, however, the plaintiff employed a different attorney in May or June of 1967, who advised that the defense of the statute of limitations interposed by the estate was meritorious. As a result, the plaintiff was forced to compromise his claim (allegedly worth $50,000) for $2,500.

More than three years later, on August 11, 1970, the plaintiff filed the present action alleging that the defendant's failure to make a timely assertion of the claim constituted professional malpractice in violation of his duty of care to the plaintiff and also in breach of the implied contract between them. In a decision and order dated July 28, 1972, the trial court granted the defendant's motion for summary judgment on the ground that the claim was barred by the two-year statute of limitations for "damage to persons or property," HRS § 657-7.[1] The judgment, also dated July 28, 1972, was entered on August 7, 1972.

From the judgment dismissing his complaint the plaintiff now appeals to this court, urging as error the following points: (1) the trial court erred in applying HRS § 657-7 to the facts of this case and should have applied either the six-year statute of limitations for actions of a contractual nature contained in

---

[1] HRS § 657-7 reads:

Actions for the recovery of compensation for damages or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13.

This section was amended in 1972 to singularize the word "damages." L. 1972 ch. 105, § 1(e).

HRS § 657-1(1),[2] or the four-year statute for personal actions "not specifically covered" elsewhere, provided in HRS § 657-12[3] (now deleted by SLH 1972 ch. 105, § 1(q), and made a part of the six-year statute of limitations in HRS § 657-1 by SLH 1972 ch. 105, § 1(a) ), (2) the trial court erred in dismissing the complaint in the face of a genuine question of fact on the issue of whether the defendant fraudulently concealed the existence of a claim against him, thereby tolling the statute of limitations until the plaintiff discovered that he had a claim entitling him to relief, and extending the period within which he could sue to six years thereafter as provided by HRS § 657-20[4] (now amended by SLH 1972 ch. 105, § 1*(1)* ), and (3) the trial court, if it had applied the proper statute of limitations, should have granted the plaintiff's motion for summary judgment on the issue of the defendant's liability.

## I. THE APPLICABLE STATUTE OF LIMITATIONS

The trial court concluded that the relevant limitations period in actions of this nature was two years, as set out in HRS § 657-7. Virtually all cases having occasion to construe that section have done so in the context of claims for damages resulting from *physical* injury to persons or *physical* injury to

---

[2] HRS § 657-1(1) provides in pertinent part:

The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of some court of record.

[3] HRS § 657-12 provides:

All personal actions of any nature whatsoever not specifically covered by the laws of the State shall be instituted within four years after the cause of action accrued, and not after.

[4] HRS § 657-20 provides:

If any person who is liable to any of the actions mentioned in this part, fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers that he has such cause of action, and not afterwards.

tangible interests in property.[5] For example, in *Yoshizaki v. Hilo Hospital*, 50 Haw. 1, 427 P.2d 845 (1967), *overruled on reh. on other grounds*, 50 Haw. 150, 433 P.2d 220 (1967), we held that section applicable to a malpractice claim for bodily injury arising out of negligent medical treatment.

On the other hand, this claim, as well as virtually all claims for legal malpractice, concerns a *non-physical* injury to an *intangible* interest of the plaintiff — herein the forfeiture through an attorney's alleged neglect of a client's chose in action.[6] *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 182, 491 P.2d 421, 424, 98 Cal. Rptr. 837, 840 (1971). As such, however, a claim for legal malpractice is not unlike other actions where the interests protected are intangible in nature and where the tort limitations period for "damages to person" in HRS § 657-7 seemingly apply. *E.G.*, actions for invasion of privacy or malicious prosecution. Unlike these torts, however, the act of legal malpractice generally arises out of a contractual relationship between the parties, and hence, in pleading at least, may often be made to appear as a breach of contract. Accordingly, in determining the timeliness of a complaint for legal malpractice, troublesome issues arise in choosing between the tort and contract statutes for the relevant limitations period.

---

[5] *See, e.g.*, Del Rosario v. Kohanuinui, 52 Haw. 583, 483 P.2d 181 (1971) (bodily injuries); Mauian Hotel, Inc. v. Maui Pineapple Co., 52 Haw. 563, 481 P.2d 310 (1971) (physical injury to property); Basque v. Liau, 50 Haw. 397, 441 P.2d 636 (1968) (physical injury to property); Yoshizaki v. Hilo Hosp., 50 Haw. 1, 14-17, 427 P.2d 845, 853-55 (1967), *overruled on reh. on other grounds*, 50 Haw. 150, 433 P.2d 220 (1967) (bodily injuries); Wong Nin v. City & County, 33 Haw. 379, 381 (1935) (physical injury to taro crop); Silva v. Robert Hind, Ltd., 32 Haw. 936, 941 (1934) (bodily injuries); Brown v. Bigelow, 30 Haw. 132, 145-47 (1927) (bodily injuries); Chin Kee v. Kaeleku Sugar Co., 30 Haw. 17 (1927) (physical injury to land); Kauha v. Palolo Land & Improvement Co., 20 Haw. 237 (1910) (physical injury to land). *But see* Zimmerman v. Poindexter, 78 F. Supp. 421 (D. Hawaii 1947) (finding a genuine issue of material fact as to whether a claim for false imprisonment was governed by the six-year limitations period of now HRS § 657-1(1) or the two-year period of now HRS § 657-7).

[6] Because the plaintiff's original injury in the automobile accident was physical, the defendant argues that therefore the plaintiff's malpractice claim, which seeks damages based on the compensation the plaintiff should have received in the personal injury suit against Kuroki's estate, is of a similar nature. The essence of the

There is a great deal of commentary on the question of whether a claim for an attorney's malpractice sounds in tort or in contract for the purpose of selecting the applicable statute of limitations.[7] While many states have statutes specifically providing limitations periods for such claims,[8] the courts of most states have been left at large to reach their own conclusions on the issue. In New York, for example, prior to the enactment of an express statute of limitations for legal malpractice in 1963, courts had evolved a standard which applied the limitations period for contracts to malpractice actions where there was alleged an agreement between attorney and client to reach a specific result, and the shorter statute for torts where there was no such allegation. *See, e.g., Glens Falls Insurance Co. v. Reynolds,* 3 App. Div. 2d 686, 159 N.Y.S.2d 95 (1957). In the absence of a legal malpractice statute, most jurisdictions permit a plaintiff the choice between the contract or tort limitations periods depending on how the complaint is framed. *See* Note *Attorney Malpractice,* 63 Colum. L. Rev. 1292, 1309 (1963). These jurisdictions seem to recognize that in most cases the difference between a contractual breach of the oral agreement between an attorney and his client, in which the attorney expressly or impliedly promises to exercise his best efforts on the client's behalf, and a tortious breach by an attorney of his duty of due care in handling a client's affairs turns on the phraseology employed in the complaint.

This court should avoid applications of the law which lead to different substantive results based upon distinctions

---

plaintiff's malpractice action, however, is not that the defendant caused or aggravated the plaintiff's physical injuries, but rather that the defendant's alleged professional incompetence resulted in injury to the plaintiff's inchoate *cause of action* for those physical injuries. The claim is therefore one of injury to an intangible interest. *See, e.g.,* Hillhouse v. McDowell, 219 Tenn. 362, 410 S.W.2d 162 (1966).

[7] *See, e.g.,* Prosser, *The Borderland of Tort and Contract,* in SELECTED TOPICS ON THE LAW OF TORTS 380, 423 (1954); Baxter, *Statutes of Limitations in Legal Malpractice,* 18 CLEV.-MAR. L. REV. 82 (1969); Coggin, *Attorney Negligence . . . A Suit within a Suit,* 60 W. VA. L. REV. 225, 227-28 (1958); Note, *Attorney Malpractice,* 63 COLUM. L. REV. 1292, 1292-94 (1963).

[8] *See* Baxter, *supra* note 8.

having their source solely in the niceties of pleading and not in the underlying realities. We agree with the reasoning of Justice Tobriner, writing for a unanimous California Supreme Court in *Neel v. Magana, Olvey, Levy, Cathcart & Gelfand, supra,* that regardless of the nomenclature used by the plaintiff in a legal malpractice suit, all such actions should be governed by the same statute of limitations. This follows from the proposition that, in reality, a claim of injury resulting from the professional imcompetence of an attorney is actionable under theories which are an amalgam of both tort and contract. *See generally* Prosser, *The Borderland of Tort and Contract,* in SELECTED TOPICS ON THE LAW OF TORTS 380, 423 (1954).

In *Neel,* the California Supreme Court held that claims for intangible injury resulting from legal malpractice are governed by section 339(1) of the California Code of Civil Procedure, which establishes a two-year limitations period for actions based "upon a contract, *obligation* or *liability* not founded upon an instrument in writing." 6 Cal. 3d at 182, 491 P.2d at 424, 98 Cal. Rptr. at 840 (emphasis by the court). The court based its conclusion on a long line of California cases holding that the words "obligation" and "liability" encompassed an area greater than that of express or implied contractual undertakings. *See* Note, *Client's Strategy for Damages against the Malpracticing Attorney,* 15 HAST. L. REV. 590, 596-97 (1964). In view of the fundamentally consensual quality of the attorney-client relationship, and also the usually intangible nature of any injury resulting therefrom, the application of a contractual statute of limitations for legal malpractice is logically appealing.[9] *See*

---

[9] While the relationship between a doctor and patient is also "consensual," claims for medical malpractice nearly always involve bodily injury resulting from negligent treatment. As such, they are akin to the cases cited at note 5 *supra,* concerning physical injury to tangible interests in person or property, and hence are more properly treated under HRS § 657-7. Yoshizaki v. Hilo Hosp., 50 Haw. 1, 427 P.2d 845 (1967). This is not to say, however, that a plaintiff could never plead a case of breach of contract by his doctor which would be subject to the six-year limitations period of HRS § 657-1(1); where it is alleged that a doctor expressly promised to treat the plaintiff so as to produce results in excess of the common-law tort duty of care, a contractual theory would be proper. *See* Lillich, *The Malpractice Statute of Limitations in New York and Other Jurisdictions,* 47 CORNELL L.Q. 339, 349 (1962).

*Hillhouse v. McDowell*, 219 Tenn. 362, 410 S.W.2d 162 (1966). This is true especially where, as in section 339(1) of the California Code of Civil Procedure and HRS § 657-1(1), the words "obligation" and "liability" are used in addition to the word "contract." *See Piller v. Southern Pacific R.R.*, 52 Cal. 42, 44 (1877) ("liability" defined as "[r]esponsibility, the state of one who is bound in law and justice to do something which may be enforced by action"). It is also noteworthy that the *Neel* court reached this result even though California, like Hawaii, has a "catch all" statute of limitations for all actions not otherwise covered. *Compare* CAL. CODE CIVIL PRO. § 343 (West 1954) *with* HRS § 657-12.

As indicated, HRS § 657-1(1) is similar to section 339(1) of the California Code of Civil Procedure in that it applies to "[a]ctions for the recovery of any debt founded upon any contract, *obligation*, or *liability*." (Emphasis added). Although the word "debt" in our statute may connote in ordinary parlance an express contractual liability, this court has not so limited its meaning in the past. *See Schimmelfenning v. Grove Farm Co.*, 41 Haw. 124, 130-31 (1955) (applying section 657-1(1) to actions based on implied covenants in a lease); *cf. Kerr v. Hyman Brothers*, 6 Haw. 308, 309 (1882). Moreover, we are persuaded that the words "obligation" and "liability" in section 657-1(1) would be rendered meaningless unless read to encompass actions such as this, which are hybrids of tort and contract and which have as their gravamen injury to intangible property interests. Compare *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967). A narrow reading of section 657-1(1) would thus fail to give effect to the meaning of these words — a result which transgresses the basic proposition that "[a] statute should be so construed as to make it consistent in all its parts and so that effect may be given to every section, clause or part of it." *Lyman v. Maguire*, 17 Haw. 142, 145 (1905).

We therefore hold that the timeliness of the plaintiff's complaint is governed by the six-year limitations period of HRS § 657-1(1).

## II. THE "ACCRUAL" OF THE PLAINTIFF'S CLAIM

At the earliest, the plaintiff's claim against the defendant "accrued" within the meaning of HRS § 657-1(1) on September 3, 1964 — immediately following the last day upon which the defendant could have filed a timely claim against Kuroki's estate. The instant lawsuit was initiated on August 11, 1970, less than six years after this date. It follows that the plaintiff's claim is not barred by section 657-1(1) whether we hold that the limitations period began running at the time of the defendant's "negligent act" (the rule of a majority of the states) or at the time when the plaintiff knew or should have known that he had a claim against the defendant (the rule of a growing minority of the states). *See generally* Note, *Legal Malpractice – Is the Discovery Rule the Final Solution?*, 24 HAST. L.J. 795 (1973); Note, *The Commencement of the Statute of Limitations in Legal Malpractice Actions – The Need for Re-evaluation*, 15 U.C.L.A. L. REV. 230 (1967). We therefore are not compelled at this time to decide whether the rule we announced in *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967) with respect to the accrual of claims for medical malpractice — *i.e.*, that the statute begins to run when the plaintiff "knew or should have known of the defendant's negligence," *id.* at 154, 433 P.2d at 223 — should be extended to cover claims for legal malpractice as well. *See Neel v. Magana, Olvey, Levy, Cathcart & Gelfand, supra*.

Nor do we need to rule on the plaintiff's contention that the defendant fraudulently concealed the existence of the claim within the meaning of HRS § 657-20 (now amended by SLH 1972 ch. 105, § 1(*1*)), for in any event the filing of the suit was timely under HRS § 657-1(1).

In view of the trial court's disposition of the case, it had no occasion to rule on the plaintiff's motion for summary judgment on the issue of the defendant's liability. We express no view on the merits of the plaintiff's claim, but remand the case for consideration of this motion as well as for trial on the questions of liability, if necessary, and damages.

*Paul Maki* for plaintiff-appellant.
*Arthur S. K. Fong* for defendant-appellee.

DISSENTING OPINION OF KOBAYASHI, J.,
WITH WHOM MARUMOTO, J., JOINS

I dissent.

I am of the opinion that the applicable statute of limitations in the instant case is HRS § 657-12. The opinion of the majority of the court does violence to the generally known and usual meaning of the word "debt"[1] to reach the conclusion that HRS § 657-1(1) is applicable. Clearly HRS § 657-7 and HRS § 657-1(1) are not applicable herein.

In a strained, tenuous analysis and construction of HRS § 657-1(1) the majority of the court, in actuality, judicially legislates HRS § 657-1(1) to read "actions based upon a debt, contract, obligation, or liability". The explanations stated in the opinion are:

1. "[W]e are persuaded that the words 'obligation' and 'liability' . . . would be rendered meaningless unless read to encompass actions such as this, . . .";

2. "A narrow reading of section 657-1(1) would thus fail to give effect to the meaning of these words [obligation and liability] — a result which transgresses the basic proposition that '[a] statute should be so construed as to make it consistent in all its parts and so that effect may be given to every section, clause or part of it' ".

"A debt means a fixed and certain obligation to pay money or some other valuable thing or things either in the present or in the future."
See also, In re Estate of Colburn, 26 Haw. 679, 688 (1923).

The majority of the court, in its opinion, simply overlooks the fact that HRS § 657-1(1), as enacted, states clearly, simply, and without ambiguity in its relevant portion as follows:

(1) Actions for the recovery of *any debt founded upon*

---

[1] HRS § 1-14; Burke v. Boulder M. & E. Co., 77 Colo. 230, 232, 235 P. 574, 575 (1925), which states:

"A debt means a fixed and certain obligation to pay money or some other valuable thing or things either in the present or in the future."
See also, In re Estate of Colburn, 26 Haw. 679, 688 (1923).

176

any contract, obligation, or liability, . . . . (Emphasis added.)

Thus, without any uncertainty a debt must be involved and contrary to the statement expressed by the majority of the court the remaining portion of the quoted statute are all given effect because said debt must be founded upon any contract, obligation or liability.

The opinion of the majority is difficult to comprehend, especially when we consider the amendment of HRS § 657-1 subsequent to the accrual[2] of the instant claim for relief, the fact that the language of HRS § 657-1(1) is plain and unambiguous,[3] and the clear applicability of HRS § 657-12.

---

[2] *See* Yoshizaki v. Hilo Hospital, 50 Haw. 1, 427 P.2d 845 (1967); 50 Haw. 150, 433 P.2d 220 (1967).

[3] *See* Matson Terminals, Inc. v. Hasegawa, 54 Haw. 563, 565-66, 512 P.2d 1, 2 (1973).